# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARY BETH MCHUGH,                                    Case No. 1:10-cv-734

      Plaintiff,                              Dlott, J.
                                                      Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.


## REPORT AND RECOMMENDATION

Plaintiff Mary Beth McHugh filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents twelve claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that this case should be REMANDED because the ALJ's decision fails to clearly explain the reasons for the conclusions reached and therefore the Court cannot engage in meaningful review of the ALJ's decision.

### I. Summary of Administrative Record

On October 18, 2005, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of April 23, 2004, due to back pain and cognitive decline. (Tr. 69-71). She was born in 1954 and was 50 years old at the time she filed her applications for DIB and SSI. *Id.* After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge (ALJ). On August 29, 2008, Plaintiff, who

1

was represented by counsel, appeared and testified at a hearing before ALJ Geraldine H. Page. (Tr. 655-82). A vocational expert (VE), Dr. Donald Anderson, also appeared and testified at the hearing.

On December 29, 2008, the ALJ entered her decision denying Plaintiff's DIB and SSI applications. (Tr. 20-36). The Appeals Council denied Plaintiff's request for review. (Tr. 6-10). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2.  The claimant has not engaged in substantial gainful activity since April 23, 2004, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*)

    ……………………..

3.  Since the alleged onset date of disability, the claimant has had the following severe combination of impairments: arthralgia of the right knee; status post arthrosporic partial meniscectomy; fibromyalgia; sleep apnea; gastritis/colitis/irritable bowel syndrome (IBS); migraines; depression and bipolar disorder; and mild cognitive impairment (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

    ……………………..

4.  Since the alleged onset date of disability, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

    ……………………..

5.  After careful consideration of the entire record, the undersigned finds that, prior to October 10, 2008, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant should not be exposed to polluted environments or to respiratory irritants

or extreme cold; she should avoid working around hazardous machinery, at unprotected heights, climbing ladders/ropes/scaffolds, driving where consistent vigilance is required, or on vibrating surfaces; she should not be exposed to loud background noise; and she is limited to simple, routine, repetitive, unskilled work.

……………………..

6.   After careful consideration of the entire record, the undersigned finds that, beginning on October 10, 2008, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant should not be exposed to polluted environments or to respiratory irritants or extreme cold; she should avoid working around hazardous machinery, at unprotected heights, climbing ladders/ropes/scaffolds, driving where consistent vigilance is required, or on vibrating surfaces; she should not be exposed to loud background noise; and she is limited to simple routine, repetitive, unskilled work.

……………………..

7.   Since the alleged onset date of disability, the claimant has been unable to perform past relevant work (20 CFR 404.1565 and 416.965).

……………………..

8.   The claimant was born on January 28, 1954 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10.  Prior to October 10, 2008, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  Beginning on October 10, 2008, the claimant has not been able to transfer any job skills to other occupations (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

……………………..

11.  Prior to October 10, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. Beginning on October 10, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966.)

   ……………………..

13. The claimant was not disabled prior to October 10, 2008, but became disabled on that date and has continued to be disabled through the date of this decision.  (20 CFR 404.1520(g) and 416.920(g)).

   ……………………..

14. The claimant was not under a disability within the meaning of the Social Security Act at any time through December 31, 2007, the date last insured (20 CFR 404.315(a) and 404.320(b)).

15. The claimant's substance use disorder(s) is not a contributing factor material to the determination of disability (20 CFR 404.1535).

   ……………………..

(Tr. 22-36).  Thus, the ALJ determined that Plaintiff was not under disability through December 31, 2007, her date last insured, and not entitled to DIB.  The ALJ further determined that beginning on October 10, 2008, Plaintiff was under a disability as defined by the Social Security Regulations and therefore entitled to SSI.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work;

and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

The primary issue in this case concerns Plaintiff's request for an earlier onset date of disability for her DIB and SSI claims. Plaintiff asserts that the ALJ's finding that Plaintiff was not disabled from April 23, 2004 through October 10, 2008 is not supported by substantial evidence. In concluding that Plaintiff was not disabled prior to October 10, 2008, Plaintiff maintains that the ALJ erred by: 1) improperly weighing the medical evidence; 2) failing to properly determine Plaintiff's onset date of disability; 3) failing to find that Plaintiff was disabled pursuant to GRID Rule 201.14; 4) failing to give adequate weight to the opinions of Plaintiff's treating physicians; 5) failing to comply with SSR 96-8p and SSR 85-15 in formulating Plaintiff's residual functional capacity; 6) improperly finding that Plaintiff could perform light work; 7) failing to pose an accurate hypothetical to the vocational expert; 8) failing to schedule a supplemental hearing and properly consider post-hearing evidence; 9) failing to obtain testimony from medical expert; 10)

failing to find that Plaintiff's back and neck osteoarthritis were severe impairments; 11) failing to comply with SSR 96-7p in evaluating Plaintiff's complaints of pain; and 12) failing to find Plaintiff's testimony fully credible.

Plaintiff's statement of errors consists primarily of unsupported and conclusory allegations, and as such, several of Plaintiff's alleged errors are not well-taken.[1] Nonetheless, upon careful review, the Court finds that the ALJ's decision cannot be affirmed as it stands and remand is warranted. As more fully explained below, the Court is unable to engage in meaningful review of the ALJ's decision because the ALJ failed to adequately explain the rationale for the conclusions reached.

### C.    The ALJ's Onset of Disability Determination

Plaintiff asserts that the ALJ arbitrarily selected October 10, 2008, as Plaintiff's onset date of disability. Specifically, Plaintiff argues that such a date bears no relation to any evidence of record, nor to Plaintiff's date of birth. Accordingly, Plaintiff's asserts the ALJ's onset of disability determination is not supported by substantial evidence. The undersigned agrees.

#### 1.  Meaningful review

As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by

---

[1]  Many of Plaintiff's errors are also duplicative and will be considered together when applicable.

the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

When an ALJ fails to mention relevant evidence in his or her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Secretary of Health & Human Servs*., Case No. 86-5875, 1988 WL 34109, at * 2 (6th Cir. Apr. 18, 1988) (*quoting Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)); *see also Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996) (The Court cannot uphold the decision of an ALJ, even when there may be sufficient evidence to support the decision, if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

### 2. *Relevant Medical Evidence*

As detailed above, the ALJ found that Plaintiff suffers from the following severe combination of impairments, arthralgia of the right knee; status post arthrosporic partial meniscectomy; fibromyalgia; sleep apnea; gastritis/colitis/irritable bowel syndrome (IBS); migraines; depression and bipolar disorder; and mild cognitive impairment. The record contains the following assessments related to Plaintiff's ability to perform work-related activities:

In January 2006, Plaintiff was evaluated by consulting psychologist Albert Virgil, Ph.D. (Tr. 311-14). Dr. Virgil found that Plaintiff's daily activities were "not significantly impaired because of strictly mental or emotional disorder;" she "did not display behaviors indicating she [was] incapable of cooperating with supervisors and co-workers"; she was able to follow repetitive tasks; and she "did not present as being prevented by strictly mental or emotional impairment from completing daily work activity." (Tr. 313-14).

In March 2006, state agency psychologist Guy Melvin, Ph.D., reviewed the medical evidence of record and concluded that Plaintiff's mental impairments were not severe, and resulted in no more than mild restrictions in activities of daily living. Dr. Melvin also found that Plaintiff had no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. 323-35).

Also in March 2006, state agency physician Rebecca Neiger, M.D., reviewed the file and opined that Plaintiff could lift and/or carry and push and/or pull up to 50 pounds occasionally and 25 pounds frequently; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; should avoid exposure to extreme cold and respiratory irritants; and should never climb ladders/ropes/scaffolds (Tr. 315-22). Dr. Neiger further determined that Plaintiff's "allegations vary [regarding] the reason she cannot work. Most consistently she reports mental/psychological reasons. Occasionally she reports diarrhea as uncontrollable, but her weight is not being affected." (Tr. 316).

In October 2006, state agency psychologist Melanie Bergsten, Ph.D., reviewed the evidence of record and affirmed Dr. Melvin's March 2006 assessment that Plaintiff's mental impairments were not severe.  (Tr. 383).

In a September 3, 2008 letter, Dr. Saroch, Plaintiff's treating psychiatrist from May 2006 through April 2008, opined that Plaintiff was unable to work due to her bipolar disorder.  (Tr. 621).

On October 4, 2008, Plaintiff was seen by Thomas Heiskell, Ph.D. for a consultative examination at the request of the state agency.  Dr. Heiskell found that Plaintiff's ability to follow instructions was severely limited; her ability to maintain attention to perform simple, repetitive tasks was "at least mildly limited by the severity of her memory functioning deficits"; her ability to relate to co-workers and supervisors was moderately limited; and her ability to withstand the stress and pressures associated with day-to-day work activity was severely limited by her cognitive decline.  (Tr. 628).  Dr. Heiskell also completed a Medical Source Statement of Ability to Do Work-Related Activities wherein he found that Plaintiff was moderately limited in her ability to understand and remember simple instructions; carry out simple instructions; make judgments on simple, work-related decisions; and interact appropriately with the public. (Tr. 630-31).  He further indicated that she was markedly limited in her ability to interact appropriate with supervisors and co-workers; she was extremely limited in her ability to understand, remember, and carry out complex instructions; make judgments on complex, work-related decisions; and respond appropriately to usual work situations and changes in work setting.  (Tr. 630-31).

Lastly, on October 10, 2008, Plaintiff was evaluated by consulting physician David Provaznik, D.O. (Tr. 633-44). Dr. Provaznik's physical examination of Plaintiff was "unremarkable," and he found that her "mentation appear[ed] appropriate during this exam." (Tr. 634). He also found that Plaintiff could occasionally lift and carry up to 100 pounds, and could frequently lift and carry up to 20 pounds; could sit up to four hours without interruption and four hours total; could stand for up to two hours without interruption and two hours total; and could walk for up to two hours without interruption and two hours total. (Tr. 640). Thus, Dr. Provaznik's sitting, standing and walking restrictions limited Plaintiff to sedentary work.[2]

### 3. The ALJ's Onset Date of Disability Determination

In making his RFC determination that Plaintiff was capable of performing a range of light work, the ALJ rejected the assessment of Dr. Saroch that Plaintiff's impairments prevented her from working. (Tr. 33). The ALJ gave "some weight" to Dr. Heiskell's findings because he found "more profound mental functional limitations than are found by other examining and treating mental health professionals." *Id.* The ALJ gave "great weight" to the findings of Dr. Virgil and Dr. Bhasin, who found that Plaintiff's cognitive and mental impairments did not result in any functional limitations. Notably, the ALJ also specifically *rejected* the October 10, 2008 assessment by Dr. Provaznik finding his conclusions to be inconsistent with his own findings and with other medical evidence. (Tr. 33).

---

[2] Sedentary work is defined as involving lifting no more than ten pounds at one time, standing and walking occasionally, and sitting for at least six hours in an eight-hour day, 20 C.F.R. § 404.1567(a); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 498 (6th Cir.1985).

However, at step five of the sequential analysis, the ALJ determined that beginning on October 10, 2008, considering Plaintiff's age, work experience, and residual functional capacity, there were not a significant number of jobs in the national economy. Thus, as of October 10, 2008, the ALJ determined that Plaintiff was disabled within the meaning of the Social Security Act. In so concluding, the ALJ stated:

> The claimant was 54.7 years old on October 10, 2008, and a mechanical application of the Medical-Vocational Guidelines would have classified her as an individual closely approaching advanced age. After evaluating the overall impact of all the factors in this borderline age case, this Administrative Law Judge finds that a mechanical application of the Medical-Vocational Guidelines in not appropriate and the claimant should be classified as an individual of advanced age. Beginning on October 10, 2008, even if the claimant had the residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of "disabled" would be reached by direct application of Medical-Vocational Rule 202.06.

(Tr. 35).

Thus, the ALJ ultimately determined that because Plaintiff's was near her fifty-fifth birthday on October 10, 2008, Plaintiff was disabled because there were not jobs that he could perform that existed in significant numbers. The ALJ reached this conclusion by applying the Medical-Vocational Guidelines, which enable the Agency fact finder to take administrative notice of the number of unskilled jobs in the national economy based on an assessment of a claimant's exertional limitations, age, education, and work experience. Each of the Commissioner's findings concerning the individual's age, education, work experience, and residual functional capacity must be supported by substantial evidence. 20 C.F.R. Subpart P, Appendix 2, § 200.00; *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981). When those four factors are considered, the guidelines can direct a decision of "disabled" or "not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00; *see Heckler v. Campbell*, 461 U.S. 458, 467-68 (1983).

In this case, the ALJ's onset of disability finding cannot be affirmed because she failed to make sufficiently clear the reason(s) for the selection of Plaintiff's onset date of disability as October 10, 2008. Notably, the record contains two assessments from October 2008, both of which found that Plaintiff's impairments resulted in functional limitations precluding gainful employment.[3] However, the ALJ rejected, at least in part, both assessments. The ALJ gave "some weight" to Dr. Heiskell's findings and accorded "no weight to Dr. Provanzik's assessment "because his conclusions are inconsistent with his own clinical findings and with the other medical evidence." (Tr. 33). Had such assessment(s) been accepted, the ALJ's onset date would have at least beared some logical connection to the evidence of record. The ALJ's decision as it is currently written is confusing at best.

Furthermore, Plaintiff's birthdate of January 28, 1954 also bears no relation to the ALJ's onset date. Under the grid, Plaintiff would have been found to be disabled on her fifty-fifth birthday or on January 28, 2009, four months after the ALJ's onset date of disability determination. The Commissioner argues that the ALJ properly applied the grid rules as the agency regulations provide that "[w]e will not apply the age categories [of the GRID] mechanically in a borderline situation. If you are within a few days to a few months of a reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of the factors of your case." 20 C.F.R. § 404.1563(b). As such, the Commissioner asserts that ALJ

---

[3] Dr. Provaznik's assessments found Plaintiff capable of performing a limited range of sedentary work. However, even with a capacity for sedentary work, Grid Rule 201.14 of the Medical-Vocational Guidelines found in 20 C.F.R. pt. 404, subpt. P, app. 2, tab. 1, dictates a finding of disability.

Page was generous to Plaintiff by applying the GRID favorably a few months before her fifty-fifth birthday. The Commissioner's assertion may be correct, however, the ALJ's failure to provide any explanation for her decision to apply the grid rules a few months prior to Plaintiff's 55th birthday, prevents the Court from making such a determination.

Additionally, the undersigned agrees with Plaintiff that the ALJ failed to comply with Social Security Ruling 83-20 in establishing Plaintiff's onset date of disability. Once a finding of disability is made, the ALJ must determine the onset date of the disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997). Social Security Ruling 83-20 governs the determination of disability onset date. The ruling states, in relevant part:

> Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

SSR 83-20, 1983 WL 31249, at *1. In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. *Id.* at *3. The ruling further states that "the medical evidence serves as the primary element in the onset determination." *Id.* at *2. Here, the ALJ made a finding of disability, however, there is no indication from the ALJ's decision that she properly applied the factors set forth in SSR 83-20 in determining Plaintiff's onset date. In fact, the ALJ provided absolutely no reason for her decision to choose October 10, 2008 as Plaintiff's onset date of disability.

An ALJ "is not required to mention every piece of evidence but must provide an accurate and logical bridge between the evidence and the conclusion that the claimant is not disabled." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (citation and

quotation omitted).  However, that bridge was not built in this case, as is necessary so that this reviewing Court may assess the validity of the agency's ultimate findings and afford Plaintiff meaningful judicial review.  *Id.*

Thus, while the ALJ's onset date of disability determination may be supported by substantial evidence in the record, the Court cannot make that determination because the ALJ failed to explain the rationale for such a finding, thus preventing any meaningful review.  *See McCoy v. Dir., Office of Worker's Comp.*, *Dep't of Labor*, No. 88-3926, 1989 WL 128684, at *2 (6th Cir. Oct. 30, 1989) ("[T]he ALJ's imprecise finding is essentially unreviewable by this court since it is impossible to determine what evidence the ALJ credited and what evidence he rejected" in determining Plaintiff's onset date.); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) ("[W]here the ALJ's decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded.'").  As further proceedings are required, this matter should be remanded for a proper determination of Plaintiff's disability onset date.[4]

### C.  Evaluation of the Opinion Evidence

Plaintiff's First, Fourth, and Sixth assignments of error are also well-taken. Such errors allege that the ALJ erred in weighing the medical evidence.

#### 1.  Dr. Saroch

The record contains treatment notes from Sandeep Saroch, M.D., Plaintiff's psychiatrist, from May 4, 2006 through April 1, 2008.  (Tr. 592-619).  In May 2006, Plaintiff saw Dr. Saroch complaining of chronic depression, short-term memory loss, and problems sleeping.  (Tr. 616-19).  Dr. Saroch diagnosed bipolar disorder, and

---

[4]  Although Plaintiff asserts that she became disabled in April 2004, the Court makes no finding in that regard, as such a factual determination must be made by the ALJ and not the Court.

prescribed Effexor and Abilify. (Tr. 619). In a September 3, 2008 letter, Dr. Saroch stated the following:

> Ms. McHugh has been a patient of mine since 05/04/06. She presented with symptoms which included but were not limited to: depressed mood, low energy, low concentration, anhedonia, psychomotor retardation, feelings of worthlessness/hopelessness, decreased need for sleep, euphoric mood, racing thoughts, psychomotor agitation, distractability, thought disorganization, elementary auditory hallucinations, mood instability and anxiety symptoms. She has been diagnosed with Bipolar Disorder, severe with psychotic features, most recent episode depressed. Her current medications are Lamictal 100 mg, four tablets daily, Ability 15 mg daily, Elavil 100 mg at bedtime and Klonopin 0.5 mg daily.
>
> Ms. McHugh feels she is unable to maintain gainful employment and I concur with her. Bipolar disorder is a lifelong illness. Complete recovery is not anticipated merely a control of symptoms through medication management.

(Tr. 621).

The ALJ afforded "no weight" to Dr. Saroch's opinion that Plaintiff is unable to maintain gainful employment. (Tr. 33). In so concluding, the ALJ found that Dr. Saroch's disability finding was inconsistent with his own treatment notes and inconsistent with other record evidence. In that regard, the ALJ found that Dr. Saroch previously noted that Plaintiff's symptoms improved mildly or improved significantly. Notably, the ALJ cited to Dr. Saroch's treatment notes from February 1, 2007, wherein he diagnosed moderate bipolar disorder, but he also noted that Plaintiff's symptoms were generally stable. (Tr. 605). The ALJ also noted that consulting physician Dr. Provanzik, found on October 10, 2008, that Plaintiff's "mentation appeared appropriate" and that she did "have some trouble with some of the memory issues; but none was terribly evident during this exam." (Tr. 634). The ALJ's findings in this regard are not substantially supported.

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected.*" Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Social Security

Ruling 96-2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544.  The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[] meaningful review of the ALJ's application of the rule." *Id.*  Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal.  *Id.* at 547.

The ALJ's decision does not reflect an analysis of these factors.  As noted above, the ALJ gave no weight to Dr. Saroch's disability finding because his treatment notes indicated that Plaintiff's symptoms generally improved and were stable.  Such a finding, however, misinterprets Dr. Saroch's treatment notes and fails to consider Dr. Saroch's longitudinal treatment history of Plaintiff, as well as his objective findings.[5]  Notably, Dr. Saroch had treated Plaintiff for over two years at the time he assessed Plaintiff's mental residual functional capacity.   The record contains twenty seven pages of treatment notes detailing Dr. Saroch opinions and clinical findings relating to Plaintiff's mental impairments.  These include clinical findings such as depressed or sad mood (Tr. 592, 593, 594, 595, 598, 597, 602, 612, 614, 616); labile mood (Tr. 614, 618); psychomotor retardation (603, 608, 610, 616); slowed speech (Tr. 608); anxious or nervous mood (Tr. 614, 618); and homicidal/suicidal ideation.  (Tr. 616).  The ALJ's selective presentation

<hr />

[5]Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c).  *See* 20 C.F.R. § 404.1512(b)(1).  "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques.  Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception.  They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

of the more positive aspects of the therapy notes does not negate the findings set forth in the remainder of the treatment notes which support Dr. Saroch's assessment and does not constitute "good reasons" for rejecting his assessment.

Furthermore, the ALJ's reliance on Dr. Provaznik's findings to reject Dr. Saroch's disability opinion is unreasonable because Dr. Provaznik specializes in Osteopathic Medicine, and is not a mental health professional. Notably, the ALJ rejected Dr. Saroch's opinions, in part, because Dr. Provaznik found that Plaintiff's "mentation appeared appropriate" and that she "did have some trouble with some of the memory issues; but none was terribly evident during this exam." (Tr. 634). However, Dr. Saroch found Plaintiff disabled based upon her limitations resulting from bipolar disorder, not because of deficits in her cognitive functioning.

The ALJ's stated reasons in this case are without substantial support in the record. The ALJ failed to consider the length of treatment and supportability of Dr. Saroch's opinions, and his reliance on Dr. Provaznik's assessment to discredit Dr. Saroch's findings was unreasonable.

*2. Dr. Heiskell and Dr. Provaznik*

Plaintiff further asserts that the ALJ improperly evaluated the findings of Dr. Heiskell and Dr. Provaznik, both of whom provided post-hearing assessments indicating that Plaintiff is unable to perform light work as found by the ALJ.[6] However, other than conclusory allegations, Plaintiff fails to provide any argument relating to how the ALJ erred in weighing these opinions. In any event, although the ALJ rejected their

_____

[6] The administrative hearing in this matter was held on August 26, 2008. At the close of the hearing, the ALJ concluded that Plaintiff should be sent to a consultative examiner for further evaluation of her cognitive and mental impairments, and left the record open for an additional thirty days. (Tr. 680-82).

assessments, both rendered in October 2008, the ALJ also found Plaintiff disabled as of October 10, 2008. Because the ALJ's decision is less than clear in this regard, the undersigned is unable to determine if the ALJ properly evaluated such opinions. Accordingly, on remand, the ALJ should be instructed to reevaluate the weight given to the assessments of Dr. Heiskell and Dr. Provaznik.

### 3. Dr. Bhasin and Dr. Virgil

The ALJ gave great weight to the assessments of Dr. Bhasin, Plaintiff's treating neurologist from January 2006 through June 2007, and Dr. Virgil, a state agency psychologist who examined Plaintiff on January 18, 2006. Dr. Bhasin found that Plaintiff suffered from only a mild cognitive impairment. (Tr. 351, 416). In addition, Dr. Virgil, concluded that Plaintiff's mental or emotional impairments did not result in any functional limitations. (Tr. 314).

Plaintiff argues that the ALJ erred in her interpretation of Dr. Bhasin's findings because even a "mild" cognitive impairment would preclude all gainful activity. (Doc. 9 at 6). Again, Plaintiff provides no evidentiary support or additional argument in support of this conclusory allegation.[7] The ALJ's evaluation of Dr. Bhasin's findings appear to be within her "zone of choice."[8]

---

[7] Plaintiff lists the "symptoms" of Mild Cognitive Impairment as stated by "The Mayo Clinic." *Id.* However, Plaintiff provides no citation to any medical publication or website in support of this assertion.

[8] The Sixth Circuit has explained:

"The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

Plaintiff further argues that the ALJ erred in relying on Dr. Virgil's assessment because it was conducted prior to the submission of the majority of the medical evidence, including the findings of Dr. Saroch, Plaintiff's treating psychiatrist. *See Blakely v Commissioner of Social Security*, 581 F.3d 399, 409 (6th Cir. 2009) (ALJ may rely on non-examining source opinion over treating source opinion only when non-examining source bases the assessment on a review of the complete medical record). *See also Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983) (it is clearly established law that the opinion of a non-treating "one-shot" consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years). Viewing the ALJ's decision as a whole, Plaintiff arguments are well taken with respect to Dr. Virgil.

However, in light of the errors committed by the ALJ as outlined above, on remand the ALJ should be instructed to re-evaluate all the opinion evidence, including the findings of Dr. Bhasin and Dr. Virgil.

### D. Plaintiff's Credibility

Plaintiff's eleventh and twelfth assignments of error assert that the ALJ erred in evaluating Plaintiff's pain and credibility in accordance with Social Security Ruling 96-7p. SSR 96-7p provides in part:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the

adjudicator gave to the individual's statements and the reasons for that
weight.

SSR 96-7p.

The ALJ's credibility decision must also include consideration of the following
factors: 1) the individual's daily activities; 2) the location, duration, frequency, and
intensity of the individual's pain or other symptoms; 3) factors that precipitate and
aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any
medication the individual takes or has taken to alleviate pain or other symptoms; 5)
treatment, other than medication, the individual receives or has received for relief of
pain or other symptoms; 6) any measures other than treatment the individual uses or
has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing
for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors
concerning the individual's functional limitations and restrictions due to pain or other
symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

Here, the ALJ found that Plaintiff's subjective complaints of pain were not
credible prior to October 10, 2008, to the extent that they are inconsistent with the ALJ's
RFC finding. (Tr. 32). The ALJ noted that the medical evidence revealed that Plaintiff's
migraines were well controlled, and although Plaintiff complained of occasional diarrhea,
the record evidence indicated that was "not persistent" and "usually remits itself
spontaneously." *Id.* With respect to Plaintiff's complaints of neck and back pain, the
ALJ noted that Plaintiff reported that she was doing much better in May 2006, and that
she was getting good relief from Naprosyn and Ultram in June 2007. The ALJ also
noted that Plaintiff's neurologist remarked that her cognitive impairments were not
serious enough to prohibit daily activities and mostly took the form of forgetting names

and dates. Beginning October 10, 2008, however, the ALJ found Plaintiff's "allegations regarding her symptoms and limitations are generally credible." (Tr. 34). The ALJ did not provide any rationale for that determination.

The ALJ's credibility determination cannot be affirmed as it stands. While the ALJ's analysis reasonably considered Plaintiff's physical impairments, there is no indication that she properly considered Plaintiff's mental impairments. As noted above, Plaintiff was diagnosed with bipolar disorder and depression, and the record contains treatment notes from Plaintiff's psychiatrist, Dr. Saroch from May 2006 through April 2008. Furthermore, the ALJ does not make sufficiently clear the significance of the October 10, 2008 date, *i.e.* - why she found Plaintiff's complaints to be credible after that date (and not credible prior to that date).

The Court cannot perform a meaningful review of the ALJ's determination that Plaintiff's subjective complaints were not credible because the ALJ failed to evaluate Plaintiff's credibility in accordance with SSR 96-7p and did not sufficiently explain the rationale for her credibility determination. Accordingly, remand is also necessary for the ALJ to properly assess the credibility of Plaintiff's subjective complaints of pain and provide reasons for her credibility determination that are sufficiently specific to make clear the weight she gave Plaintiff's statements and the reasons for that weight.

### E. Plaintiff's Remaining Errors

Plaintiff further asserts that the ALJ's RFC finding and her hypothetical questions to the vocational expert were not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ's RFC assessment failed to include any limitations relating to her colitis and improperly found that she was capable of performing light work.

Plaintiff further argues that the ALJ's hypothetical questions to the VE did not accurately portray Plaintiff's impairments.

Because the undersigned cannot engage in a meaningful review of the ALJ's onset date of disability determination as outlined above, and because the ALJ must reconsider the opinion evidence of record, it is also necessary for the RFC determination to be considered on remand. The impairments that the ALJ found credible were included in her RFC determination, but the picture may change after the medical evidence is reevaluated on remand, making it appropriate to keep this question open also. The same is true with respect to the hypothetical the ALJ posed to the VE. While the questions she asked took into account the pain symptoms she found credible, this issue will need to be reconsidered in light of any new findings on remand.

### F.  Testimony of a Medical Expert Should be Obtained on Remand

Lastly, the undersigned finds that the services of a medial advisor should be obtained on remand in order to reevaluate the weight given to the medical opinions of record, and properly determine the onset date of disability Plaintiff's impairments, including whether Plaintiff's impairments meet or equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

Notably, SSR 83-20 recognizes that an ALJ should call on the services of a medical expert when he or she has to infer the onset date of disability. However, SSR 83-20 contemplates calling a medical expert when "there is no development of the medical record on which the ALJ can rely to ascertain onset." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006). Although the record contains substantial medical evidence and numerous assessments relating to Plaintiff's ability to perform work-related activities, in light of the progressive nature of Plaintiff's cognitive

and mental impairments, the undersigned finds that this case is one in which the ALJ may be substantially aided by a medical expert to assist in the determination of whether all of the evidence justifies an earlier disability onset date and/or prior to the expiration of Plaintiff's insured status on December 31, 2007. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989) (impairments were of a slowly progressive nature, thus the ALJ failed to draw inferences from the medical and other evidence as to whether claimant was able to engage in substantial gainful activity prior to the expiration of his insured status).

## III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1.  The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2.  On remand, the ALJ be instructed to: 1) discern and present a coherent rationale behind the onset date of Plaintiff's disability; 2) properly assess and evaluate the opinion evidence, including Dr. Saroch's treating source opinions and the post-hearing assessments of Dr. Heiskell and Dr. Provaznik, in accordance with agency regulations and controlling law; and 3) properly consider Plaintiff's credibility and complaints of pain, and provide a clear explanation for the conclusions reached therein.

3.  As no further matters remain pending for the Court's review, this case be **CLOSED.**

    _s/Stephanie K. Bowman_
    Stephanie K. Bowman
    United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARY BETH MCHUGH,                                        Case No. 1:10-cv-734

      Plaintiff,                                                Dlott, J.
                                                                          Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).